# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RAVEN TATE,

        Plaintiff,

        v.

NANCY A. BERRYHILL,[1] Acting
Commissioner of Social Security

        Defendant.

No. 17 C 1855

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Raven Tate filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB on January 18, 2013, alleging she became disabled on March 21, 2013, due to ureter injury. (R. at 85). The application was denied initially

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 15, 84, 93). On October 8, 2015, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge (ALJ) Kevin Plunkett. (*Id.* at 33–83). The ALJ also heard testimony from Pamela Tucker, a vocational expert (VE). (*Id.*).

The ALJ denied Plaintiff's request for benefits on December 1, 2015. (R. at 16–28). Applying the five-step sequence for assessing disability, *see* 20 C.F.R. § 404.1520(a), the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 21, 2013. (*Id.* at 21). At step two, the ALJ found that Plaintiff had the following severe impairments: ureter injury, status post hysterectomy, renal disorder, asthma (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.*).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but with the following limitations:

> can only be occasionally exposed to dust, odors, fumes, and other pulmonary irritants. Additionally, the claimant needs to have the ability to use an assistive device for walking. The claimant also requires a sit/ stand option that would [include] an ability to switch to standing for two minutes after every 30 minutes of sitting, and the ability to change to sitting for two minutes after every 15 minutes of standing or walking.

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

(R. at 22). The ALJ determined at step four that Plaintiff was able to perform past relevant work as a check clerk. (*Id.* at 26). In the alternative, based on Plaintiff's RFC, age, education, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including document preparer, address clerk, and circuit board assembler. (*Id.* at 27-28). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date through the date of the ALJ's decision. (*Id.* at 28).

The Appeals Council denied Plaintiff's request for review on January 9, 2017. (R. at 1–4). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a

conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

In support of her request for reversal, Plaintiff argues that the ALJ (1) improperly assessed Plaintiff's RFC; and (2) improperly evaluated Plaintiff's subjective symptom statements. (Pl.'s Mem., Dkt. 11 at 6–13).

### A. The ALJ's Subjective Symptom Evaluation

Because an RFC assessment frequently "depend[s] heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of [her] symptoms," the Court begins with Plaintiff's argument that the ALJ improperly assessed her symptom statements. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The Regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.[3]

---

[3] Since the ALJ issued her decision in this case, the SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (effective March 16, 2016). As SSR 16-3p is simply a clarification of the Administration's interpretation of the existing law, rather than a change to it, it can be applied to Claimant's case. *See Qualls v. Colvin*, No. 14 CV

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p; SSR 16-3p. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

---

2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016). The Court acknowledges the Administration's recent clarification regarding SSR 16-3p, instructing adjudicators only to apply this ruling when making "determinations and decisions on or after March 28, 2016." *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). Nevertheless, the Court continues to follow *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) indicating SSR 16-3p and SSR 96-7p are not substantively different.

At the hearing on October 8, 2015, Plaintiff testified that she has been unable to work since she had complications from her hysterectomy in March of 2013. (R. 42, 46). She reported that since the surgery she needs to go to the hospital every two months for four to five days. (*Id.* at 52). She stated that she currently suffers from severe muscle spasms daily and severe pain. (*Id.* at 42, 44). She reported that she can only sit, walk or stand for thirty to forty-five minutes at a time before the pain becomes excruciating. (*Id.* at 44). She indicated that she cannot lift more than ten pounds and uses a cane to walk. (*Id.* at 44, 56). She testified that she cannot do any physical activities with her children, especially those involving lifting, running or jumping. (*Id.* at 44). She stated that her mother and son have to help her do the laundry. (*Id.* at 45). She reported that although she can wash dishes, she needs to take frequent breaks for five to ten minutes at a time. (*Id.* at 59–60). Further, she testified that she only sleeps two hours at a time during the night, and that she requires pain medications on a daily basis that make her drowsy. (*Id.* at 44, 62–63).

In his decision, the ALJ stated in part:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(R. at 25). As an initial matter, this is the same language that the Seventh Circuit has repeatedly described as "meaningless boilerplate" because it "yields no clue to what weight the [ALJ] gave the testimony." *Bjornson,* 671 F.3d at 645. "However, the simple fact that an ALJ used boilerplate language does not automatically

undermine or discredit the ALJ's ultimate conclusion if [she] otherwise points to information that justifies [her] credibility determination." *Pepper v. Colvin,* 712 F.3d 351, 367–68 (7th Cir. 2013). While the Court is not persuaded that the ALJ's use of this boilerplate language alone is grounds for reversal in this case; the Court finds that the only reason provided by the ALJ for rejecting Plaintiff's symptom statements is legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837, F.3d 771, 778–79 (7th Cir. 2016).

The ALJ's only explanation for why he finds Plaintiff's allegations to be "partially credible" is because "physical exam results throughout the records were generally unremarkable, documenting little in the way of functional deficits." (R. at 25). It is well-established that an ALJ "cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006). Further, and even more puzzling, the ALJ acknowledges that Plaintiff's "reported symptoms are documented consistently through the record with regard to physical discomfort and related problems with the use of nephrostomy tube, as well as the persistent symptoms of back pain and flank pain." (R. at 25). Yet, the ALJ fails to explain why this documented evidence is outweighed by physical examinations that are "generally unremarkable." Without such a "logical bridge," the Court cannot assess the validity of the ALJ's analysis. *See Villano*, 556 F.3d at 562.

Moreover, the ALJ failed to address the requisite factors outlined in SSR 16-3p and its predecessor SSR 96-7p such as daily activities, level of pain or other symptoms, aggravating factors and other limitations. As such, the Court does not "have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942. Accordingly, the Court finds that the ALJ's evaluation of Plaintiff's subjective symptoms statements was not supported by substantial evidence, requiring remand.

## B. The ALJ's RFC Determination

The ALJ determined that Plaintiff's ureter injury, status post hysterectomy, renal disorder and asthma were severe impairments. (R. at 21). After examining the medical evidence and giving partial credibility to some of Plaintiff's subjective complaints, the ALJ found that Plaintiff has the RFC to perform sedentary work except Plaintiff was limited to occasional exposure to dust, odors, fumes, and other pulmonary irritants, needs to have the ability to use an assistive device for walking; and have "a sit/ stand option that would [include] an ability to switch to standing for two minutes after every 30 minutes of sitting, and the ability to change to sitting for two minutes after every 15 minutes of standing or walking." (*Id.* at 22). Plaintiff contends that the ALJ erred by failing to incorporate, without proper explanation, all of the functional limitations recommended by the treating physician whom he gave great weight. (Pl.'s Mem., Dkt. 11 at 9–11). The Court agrees.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; see 20 C.F.R. §

404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2[4] ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). In support of his RFC determination, the ALJ explains:

> In sum, the above [RFC] assessment is supported by the weight of the record, including the medical records, opinion evidence, and credible testimony. The claimant's physical impairments result in the exertional and postural limitations assessed, as well as the requirements relating to sitting, standing, and walking. The claimant's

---

[4]     SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administering." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

asthma results in the environmental limitations assessed in the residual functional capacity.

(R. at 26). Plaintiff's treating physician, Julie Taylor, M.D., detailed Plaintiff's

limitations in a letter, stating:

> She can't lift over 10 pounds can't sit walk or stand more tha[n] 30–45 minutes at a time. She needs a cane to get around. She's on several pain medications that causes her to be drows[y]. She currently has multiple infections from the surgery which causes her to have lots of doctors' appointments monthly. Miss Tate is always in pain in multiple parts of her body.

(R. 1001). The ALJ gave "great weight" to the opinion of Dr. Taylor because "it is

consistent with the record, including the longitudinal treatment history of the

claimant . . ., and it reflects first hand treatment experience with the claimant." (*Id.*

at 29). However, in his RFC analysis, the ALJ did not address some of the

restrictions Dr. Taylor noted such as experiencing drowsiness due to the side effects

of the medication, or needing multiple doctors' appointments monthly due to the

numerous infections from surgeries. By not explaining why he did not incorporate

these functional limitations in Plaintiff's RFC, the ALJ failed "to build an accurate

and logical bridge" from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d

881, 887 (7th Cir. 2001) (citations omitted).

Defendant's argument that the ALJ's failure to incorporate all of Dr. Taylor's

limitations is harmless error is unavailing. Defendant asserts, "The fact that the

ALJ did not determine [P]laintiff would have to be absent from work [for] all of her

doctors' appointment is not determinative. Dr. Taylor only stated that plaintiff

'currently' had multiple infections, not indicating that these appointments would

continue for a significant period of time." (Def.'s Resp., Dkt. 14 at 8). This argument
is problematic for several reasons. First, this is an impermissible post hoc
rationalization. The Court must limit its analysis to what the ALJ said in his
opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("We confine our review to
the rationale offered by the ALJ"); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir.
2010) ("But these are not reasons that appear in the ALJ's opinion, and thus they
cannot be used here"); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under
the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's
decision on grounds that the agency itself did not embrace."). Second, although Dr.
Taylor uses the term "currently," Plaintiff's testimony and the medical records
corroborate that Plaintiff has required multiple monthly doctors' appointments
since her surgery in March 2013. There is no indication in the record that
Plaintiff's need for medical appointments is restricted to the time that Dr. Taylor
wrote the letter on October 7, 2015, as Defendant suggests. Third, the VE testified
that more than one absence per month would preclude Plaintiff from competitive
employment. (R. 80). Therefore, the number of absences Plaintiff requires due to
medical appointments is determinative in this case, and the ALJ erred by not
addressing this issue in his decision. Similarly, the ALJ did not discuss evidence of
Plaintiff's drowsiness as a side effect from multiple pain medications. Without such
a narrative discussion, the Court is unable to determine whether the ALJ
adequately considered this limitation in formulating the RFC. *See Cuevas v.
Barnhart*, No. 02 C 4336, 2004 WL 1588277, at *15–16 (N.D. Ill. July 14, 2004)

(finding "the Court has no way to review meaningfully the ALJ's determinations on these issues" when the ALJ did not discuss evidence of claimant's napping and concentration limitations.)

For these reasons, the Court finds that the ALJ erred by failing to address some of the restrictions set forth in Dr. Taylor's medical opinion, precluding the Court from being able to "trace the path" of the ALJ's reasoning and engage in a meaningful judicial review. *See Scott v. Barnhart,* 297 F.3d at 596 (holding that an ALJ must "consider [claimant's] proffered medical evidence and articulate specific reasons for accepting or rejecting it."); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) (finding that it is not "merely helpful for the ALJ to articulate reasons for crediting or rejecting particular sources of evidence;" rather, "it is absolutely essential for meaningful appellate review."). Because the Court is unable to determine whether the ALJ adequately considered these limitations in formulating the RFC, the case must be remanded.

On remand, the ALJ shall reevaluate Plaintiff's RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). The RFC shall be "expressed in terms of work-related functions" and include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p. Finally, with the assistance of a VE, the ALJ shall determine whether Plaintiff can perform her past relevant work or if there are jobs that exist in significant numbers that Plaintiff can perform.

## C. Remedy

Plaintiff requests a reversal of the Commissioner's decision with an order to award benefits or, in the alternative, a reversal with a remand for further proceedings. When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). The court may reverse with an instruction to award benefits only if "all factual issues have been resolved and the record can yield but one supportable conclusion." *Briscoe ex. re. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (citation omitted). That is not the case here, and it is not the purview of this Court to gather or reweigh evidence. Therefore, remand for further proceedings is the appropriate remedy.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [11] is **GRANTED**. Defendant's Motion for Summary Judgment [13] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this Opinion.

Dated: February 2, 2018        E N T E R:

_____

MARY M. ROWLAND
United States Magistrate Judge